UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARIE WINFIELD,
*pro se* Plaintiff,

v.

ANDOVER POLICE DEPARTMENT,
LIEUTENANT EDWARD J. GUY, III, and
LIEUTENANT JOHN N. PATHIAKIS,
Defendants.

C.A. No. 1:14-cv-14362

**MEMORANDUM IN SUPPORT OF THE ANDOVER POLICE DEPARTMENT, LIEUTENANT EDWARD J. GUY, III, AND LIEUTENANT JOHN N. PATHIAKIS'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)**

## INTRODUCTION

Briefly, this *pro se* action stems from plaintiff's displeasure with the manner in which the Andover Police Department has responded to certain domestic calls at plaintiff's residence and the Department's responses to her various "protest" activities, including near incessant phone calls to the Andover Police emergency and business lines, letter-writing, bringing clothing and other belongings into Town Hall and the Police Station, the use of a Town ambulance as a personal taxi, and claiming that she was going to stand out all night in front of Town Hall. As detailed below, this behavior resulted in the application for plaintiff's civil commitment pursuant to M.G.L. c. 123, §12 on two occasions. Plaintiff alleges that the defendants, Lieutenant Edward J. Guy, III ("Lt. Guy"), Lieutenant John N. Pathiakis ("Lt. Pathiakis") (together, the "Individual Officers"), and the Andover Police Department ("Police Department" or "the Department") have violated her First and Fourth Amendment rights and engaged in various torts.[1] Specifically, she

[1] For sake of ease, defendants collectively will be referred to as "the Town."

alleges that: Lt. Guy and Lt. Pathiakis violated her First Amendment rights by obtaining a Court Order for her temporary emergency commitment pursuant to M.G.L. c. 123, § 12 (Count I); Lt. Guy illegally arrested her for trespassing in violation of her Fourth Amendment rights (Count II); Lt. Guy and Lt. Pathiakis violated her First Amendment right to petition the Town of Andover by having her civilly committed, and also retaliated against her for the exercise of her First Amendment rights by having her civilly committed (Counts III & IV); and the defendants' conduct amounted to intentional infliction of emotional distress (Count VI). Plaintiff further alleges that the Andover Police Department is vicariously liable for the acts of Lt. Guy and Lt. Pathiakis, and her Complaint includes a separate claim for "gross negligence" against the Department itself (Count V).

As a preliminary matter, the Court should note the plaintiff's extremely substantial *pro se* litigation record.[2] Ms. Winfield has filed several lawsuits against local police departments,

---

[2] A review of plaintiff's recent cases filed as a *pro se* litigant, excluding this matter and the related action in Essex Superior Court from which it was removed to this Court, include nearly a dozen actions in the last four years as follows: Marie Winfield v. Elder Svcs. Of Merrimack Valley, Inc., 456 Mass. 1015 (2010); Marie Winfield v. Holy Family Hospital, et al., Essex Superior Court C.A. No. ESCV2010-00033, filed 1/7/10; Marie Winfield v. Lieutenant Kevin Dorr, et al., Essex Superior Court C.A. No. ESCV2009-01914, filed 9/30/09; Marie Winfield v. Central Catholic High School, et al., Essex Superior Court C.A. No. ESCV2010-02107, filed 10/5/10; Marie Winfield v. Haverhill Police Department, Essex Superior Court C.A. No. ESCV2009-00206, filed 1/30/09; Marie Winfield v. Holy Family Hospital, et al., Essex Superior Court C.A. No. ESCV2010-01369, filed 6/25/10; Marie Winfield v. Daniel Trotter, U.S.D.C No. 5:08-CV-278 (D. VT), filing date unknown; Marie Winfield v. Elder Services of Merrimack Valley, et al., U.S.D.C. No. 1:09-cv-11632-WGY (D. Mass.) (Young, J.), filed 9/29/09; Marie Winfield v. Florent, et al., U.S.D.C. No. 1:10-cv-10134-JLT (D. Mass.) (Tauro, J.), filed 1/28/10; and Marie Winfield v. Lawrence Police Department, U.S.D.C. No. 1:14-CV-12219-IT (D. Mass.) (Talwani, J.), filed 5/20/14.
Defendants' reliance upon these matters of public record, documents from prior court adjudications, and the police reports attached, *infra*, which are also public records - and their attaching certain records to this memorandum of law - does not convert this motion to a motion for summary judgment under Fed. R. Civ. P. 56. Watterson v. Page, 987 F.2d 1, 4 (1st Cir. 1993). The fact that these court documents are public records also means that the Court may

ambulance companies, police officers, and other institutions and establishments for perceived civil rights violations, the majority of which appear to have been dismissed. See n. 2, *supra*. The Town offers Ms. Winfield's litigation record not as evidence of her character, but in support of its argument that she should not be afforded the typical leniency often afforded to *pro se* litigants. Further, given the Superior Court's denial of Ms. Winfield's request for a preliminary injunction in an action related to this case, her harassing behavior toward the defendants, and her extensive litigation history, the Town requests that the claims against it be dismissed and this Court enjoin Ms. Winfield from abusing the court system by filing further vexatious litigation. See, e.g., Stefanik v. Town of Huntington, 536 F.Supp.2d 106, 114 (D. Mass. 2008) (the "district court has the power to enjoin litigants who abuse the court system by filing groundless and vexatious litigation"); see also Elbery v. Louison, 201 F.3d 427 (1st Cir. 1999) (noting federal courts have discretionary power to regulate conduct of abusive litigants) (citing Cok v. Family Court of Rhode Island, 985 F.2d 32, 34 (1st Cir. 1993) (per curiam)).

## FACTUAL ALLEGATIONS[3]

The Town will attempt to be brief. Ms. Winfield is a resident of the Town of Andover. Over the course of several years, Town of Andover police officers responded to Ms. Winfield's home due to various domestic incidents between Ms. Winfield and her husband, Robert Winfield. See Amended Compl., ¶¶ 6-10. On the evening of February 7, 2012, Robert Winfield came to the Town of Andover Police station reporting he had been injured in a domestic incident

---

consider them without converting this motion to a summary judgment motion. Id.; see also In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003). Notably, all of the exhibits have been redacted to exclude the plaintiff's personal identifying information.

[3] The Town takes the facts alleged in the Amended Complaint as true for purposes of this Motion to Dismiss only, and otherwise contests the veracity of the allegations and expressly reserves its right to do so. See, e.g., Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562 (2007).

involving his wife.[4] See February 7, 2012 Andover Police Department Incident Reports, attached hereto at Exhibit A. Mr. Winfield reported that his wife had injured him and she was under the influence of medication, but he opted not to pursue charges against her. Officers were dispatched to Ms. Winfield's residence; they noted she, too, had a minor facial injury, but chose not to pursue any criminal charges against her husband. The responding patrolman observed Ms. Winfield to be off balance and noted she nearly fell over. That night, Ms. Winfield walked to the Andover Police station and spoke with the defendant, Lt. Guy, and other Andover police officers. All had difficulty ascertaining what precisely Ms. Winfield's complaints were, or the reason why she was requesting to speak to their shift commander. See Exhibit A. As Lt. Guy's incident report indicates, due to Ms. Winfield's facial injury and an arm injury allegedly suffered weeks earlier from her husband, Lt. Guy called the Andover Fire Department for medical assistance. See Exhibit A; see also Amended Compl., ¶ 11. An Andover Firefighter arrived, and Ms. Winfield became increasingly belligerent and unintelligible, producing a near-empty bottle of Oxycodone (the prescription having been filled with 40 pills only 5 days prior), and a number of empty bottles of alcohol. See Amended Compl., ¶¶10-11; Exhibit A. According to one of the patrolmen who responded to Ms. Winfield's home earlier that evening, she did not recognize him in the station approximately an hour later.

The Andover Firefighter who responded to the medical call requested that, given Ms. Winfield's erratic behavior, her inability to answer questions, and the fact it appeared she had taken opiates and consumed alcohol, a civil commitment was in her best interest. Amended Compl., ¶ 13; Exhibit A. Lt. Guy and the patrolman agreed and initiated the process by contacting a psychiatrist at Lowell District Court. Pursuant to Massachusetts' involuntary

---

[4] Plaintiff erroneously notes this incident as occurring on February 12, 2012.

commitment law, Ms. Winfield was subsequently transferred to Holy Family Hospital for a psychiatric examination. Ms. Winfield alleges that Lt. Guy's report, provided to EMTs and Holy Family Hospital, contained inaccuracies. Id., ¶ 15. She also alleges that Lt. Guy instituted the civil commitment process because he "did not want to deal with the Plaintiff" and was abusing the law. Id., ¶¶ 17, 19.[5]

As a result of this incident, Ms. Winfield began a campaign to air her grievances with the Andover Police Department, Andover Fire and Rescue, and the Andover Town Manager. Id., ¶ 16. Ms. Winfield's Complaint recites her efforts to "get any accountability from Andover Police for their wrong act and misconduct toward the Plaintiff." Amended Compl., ¶ 18. Over several months, she repeatedly requested to speak with the Town Manager, the Town Manager's Secretary, the Andover Police Chief, the Andover Fire and Rescue Chief, and Lt. Guy, and began sending and dropping off often-unintelligible letters, coming to their various offices, and making dozens of phone calls to the Andover Police Department's emergency and business lines. See Id. at ¶¶ 17-22. Though not reflected in the Plaintiff's Amended Complaint, Ms. Winfield repeatedly called the Andover Police Department requesting to speak to shift commanders or the Police Chief, for no apparent reason, tying up Department phone lines reserved for emergency matters - often in lengthy rambling or slurred diatribes in which she sounded under the influence of drugs. See Relevant Police Reports attached hereto as Exhibit B with Plaintiff's accompanying handwritten notes.

---

[5] M.G.L. c. 123, § 12 ("Section 12"), provides for the emergency restraint and hospitalization of persons posing a risk of serious harm to themselves or others by reason of mental illness. In emergency situations, the statute provides that a psychologist, police officer, or other certain individuals "who [believe] that failure to hospitalize a person would create a likelihood of serious harm by reason of mental illness may restrain such person and apply for the hospitalization of such person for a 3-day period at a public facility or a private facility." Police officers and other officials who do so are immune from civil suits arising out of such action with respect to state law claims. M.G.L. c. 123, § 22.

These calls prompted several dispatches to Ms. Winfield's home, including one on October 21, 2013 where Ms. Winfield complained that her husband was abusing her by interrupting her sleep. See Exhibit B. At that time, Ms. Winfield insisted on having an ambulance transport her to Lawrence General Hospital to discuss this purported abuse, though she could not describe any mental or medical reasons for such a trip to Lawrence General Hospital or any other form of "abuse" by her husband aside from him preventing her from getting eight hours of sleep per night. Id. Still, the Andover Police Department called her a taxi; however, when it arrived and Ms. Winfield determined that she could not pay for it, she separately called for an ambulance through Andover Fire and Rescue. As the October 21, 2013, Andover Fire and Rescue Tripsheet notes, Ms. Winfield told EMTs she sought transport to Lawrence General Hospital, which would then arrange free transport for her to the Lawrence District Courthouse. See October 21, 2013 Andover Fire and Rescue Tripsheet, attached hereto as Exhibit C. The Complaint recounts this incident as one "in which Andover Police prevented the Andover Fire and Rescue from taking the Plaintiff to the hospital." Amended Compl., ¶ 19.

After Ms. Winfield made several additional phone calls to the Andover Police Department in protest of its perceived wrongdoings, in which she repeatedly hung up on a number of officers including Lt. Guy, the Clerk Magistrate (Lawrence District Court) on May 11, 2014, issued a Criminal Complaint against Ms. Winfield based upon the numerous telephone calls she made to the Department in the prior few weeks and months. Amended Compl., ¶¶ 20-22. The Department did not seek a Criminal Complaint for no reason. Ms. Winfield alleges that Lt. Pathiakis "was instrumental in taking out the criminal charge." Id. at ¶ 22.

On October 23, 2014, Ms. Winfield again called Lt. Guy, hanging up on him. Id. at ¶ 24. She then walked to Town Hall to speak to the Town Manager, bringing a considerable number of

personal belongings and luggage. When Town Hall was closing for the day, Ms. Winfield was simply asked to leave and to take her personal belongings with her. Initially, Ms. Winfield told the responding officer that she was not leaving and that she was "Occupying Andover." Eventually, Ms. Winfield did agree to leave Town Hall and continue her protest outside of the building on Main Street. Amended Compl., ¶¶ 25-26. Ultimately, due to the cold weather, Ms. Winfield apparently called her husband to come and pick her up. Id. The following day, owing to her erratic behavior, i.e. the near incessant phone calls and letter-writing, bringing clothing and other belongings into Town Hall and the Police Station, claiming she had not slept for three days, and claiming that she was going to stand out all night in front of Town Hall, the Department sought and obtained a "Section 12," which was issued by the Lawrence District Court's Psychologist. The relevant Incident Reports, pictures of the belongings Ms. Winfield brought into the Police Department and the actual Section 12 are annexed at Exhibit D. Ms. Winfield makes the unfounded allegation that this was an "ultimate act of malice to stop [her] from going through with her protest," though it is clear that a psychological evaluation was sought for Ms. Winfield's own well-being after a period of concerning behavior. It is the Town's understanding that, upon her discharge, Ms. Winfield continued to sit in front of Old Town Hall as some form of "protest." Of course, provided she does not interfere with pedestrian traffic, otherwise disturb the peace, or endanger herself or others, she is free to do so.

Last, on October 31, 2014, Ms. Winfield was arrested for violating a No Trespass order issued by the local CVS on Main Street in Andover. Ms. Winfield acknowledged the existence of the No Trespass order to Lt. Guy, stating that she had sent a "rebuttal" letter to CVS. See October 31, 2014 Incident Report with annexed No Trespass Order, attached hereto as Exhibit E. As far as the Department is concerned, Ms. Winfield was treated no differently than any other

Town resident who knowingly violates a No Trespass order. Ms. Winfield asserts that, after she was arrested for trespassing, she was told (by either the Clerk or the District Court Judge) not to call 911 anymore and that Andover Police had filed additional charges against her for calling 911. Amended Compl., ¶ 31. Ms. Winfield alleges that these charges and the trespassing arrest were "concocted" to prevent her from getting future emergency assistance. Id. On November 14, 2014, Ms. Winfield sought a preliminary injunction in Essex Superior Court to allow her to protest both inside and outside three public buildings in the Town of Andover, for purposes of airing her grievances with the Department. On November 26, 2014, after a full hearing, the Court (Drechsler, J.) denied Ms. Winfield's request for a preliminary injunction.[6] On December 9, 2014, the Town removed this action to federal court.

**ARGUMENT**

As a preliminary matter, starting with the Amended Complaint's counts against the Andover Police Department (styled as "vicarious liability" and "gross negligence" (Count V)), these claims fail as a matter of law. Under the Supreme Court's decision in Monell v. Dept. of Soc. Servcs., 436 U.S. 658, 701 (1978) and its progeny, there is no vicarious liability for the Town of Andover, and the Andover Police Department is simply a division of the Town of Andover.[7] Further, aside from the counts in her Amended Complaint listing Lt. Pathiakis's name, Ms. Winfield makes no allegation against Lt. Pathiakis other than being "instrumental in

---

[6] At the hearing, Ms. Winfield was advised that, like any other Town resident, she can address Andover's Board of Selectmen and Town Manager during the Citizens' Forum portion of the Selectmen's meetings, which are held every other week. To date, whatever her reasons, Ms. Winfield has elected not to do so.

[7] To the extent Ms. Winfield is suggesting the Andover police were grossly negligent, the Supreme court has intimated that gross negligence is insufficient for purposes of Section 1983 liability. See DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 194-195 (1989); see also Archie v. City of Racine, 847 F.2d 1211, 1218-20 (7th Cir. 1988) (en banc), cert. denied, 109 S. Ct. 1338 (1989).

taking out the criminal charge" against her for making annoying phone calls. Amended Compl., ¶ 22. This allegation alone is not sufficient to impose liability on Lt. Pathiakis, who is entitled to qualified immunity in performing this discretionary function. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) ("government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). Were Ms. Winfield's reasoning correct, the Massachusetts statute under which she was charged for making annoying or harassing phone calls, M.G.L. ch. 269, § 14A, would likely be unconstitutional. The issue of qualified immunity with respect to both Lt. Pathiakis and Lt. Guy is discussed in detail at pp. 14-15, *infra*.

***First Amendment Claims (Right to Free Speech and Petition): Counts I and III***

Ms. Winfield claims that Lt. Guy and Lt. Pathiakis's actions have violated her First Amendment Rights to the exercise of free speech and free expression through the way in which she has been treated by the Police Department, in connection with its response to certain domestic calls involving Winfield and her family. It is true that freedom of expression, especially expression of political views, "ranks near the top of the hierarchy of constitutional rights." Black Tea Society v. City of Boston, 378 F.3d 8, 11-12 (1st 2004).[8] However, like other rights secured by the Bill of Rights, it is not absolute. The constitutional standard by which the

[8] Of course, Ms. Winfield's allegations do not concern "political" speech or speech promoting any *particular* point of view. Instead, what Ms. Winfield is really alleging is that the Town has interfered with an allegedly unfettered right to verbally engage Town employees and/or physically situate herself inside several Town buildings virtually at any place, any time, without restriction. Even assuming *arguendo* that the area inside of Town Hall or the Public Safety Building is a "traditional" public forum, Winfield still would not be entitled to use these inside spaces "to protest at her convenience" without interruption: these venues are not the equivalent of Speaker's Corner. Likewise, Ms. Winfield's free speech rights under the First Amendment do not allow her to continually contact the Andover Police Department in a manner that disrupts its operation.

validity of a restriction on speech is tested depends on two variables: the nature of the forum in which a restriction applies and the type of restriction. Without any constitutional issue, even those areas which have been traditionally open to the public can be subject to reasonable time, place, and manner regulations that are content-neutral. Greenberg v. Woodward, 2001 WL 1688902 (D. Mass.) citing Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 46 (1983) (rejecting First Amendment challenge to criminal trespass conviction which is virtually identical to the statute involved here, M.G.L. c. 266, §123).[9] As the Supreme Court has held, despite the importance of the right to free speech, "the prophylaxis of the First Amendment is not without limits. Reasonable restrictions as to the time, place, and manner of speech in public fora are permissible, provided that those restrictions 'are justified without reference to the content of the regulated speech, . . . are narrowly tailored to serve a significant governmental interest, and . . . leave open ample alternative channels for communication of the information.'" Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) quoting Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293 (1984). A regulation is narrowly tailored if "the means chosen are not substantially broader than necessary to achieve the government's interests." Ward, 491 U.S. at 800. To satisfy this benchmark, a regulation need not be the least restrictive alternative available to the government. Id. at 798-799. Put another way, the validity of a time, place, or manner regulation is not subject to " 'a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests' or the degree to which those interests should be promoted." Id. at 800 (quoting United States v.

[9] Of course, even speech in places considered a "traditional" public forum such as sidewalks and parks, can be subject to some restriction without running afoul of the First Amendment. See McGuire v. Reilly, 386 F.3d 45 (1st Cir. 2004) (upholding Massachusetts statute which creates 18-foot buffer zone around reproductive health care facilities). In a limited or non-public forum, which is the situation here, a restriction need only be viewpoint neutral and reasonable in scope. Pleasant Grove City v. Summum, 555 U.S. 460, 470 (2009).

Albertini, 472 U.S. 675, 689 (1985)); see also Roman v. Trustees of Tufts College, 461 Mass. 707, 716-717 (2012) (discussing the three categories of public forums: traditional; limited; and non-public fora). Here, while Ms. Winfield is not challenging any Town regulation *per se*, the Town submits that her First Amendment claim is, nonetheless, perhaps best viewed under this time, place, and manner rubric.

The Town is not aware of any Supreme Court or First Circuit precedent allowing individuals to protest *inside* of government buildings without first obtaining permission to do so and, moreover, allowing individuals to remain inside a municipal building "to protest" or otherwise engage in protest activities beyond regular business hours.[10] To allow such unfettered access inside municipal buildings – as Ms. Winfield has sought and appears to be seeking still – would be quite burdensome to municipal officials working inside the building(s) and likely pose serious security concerns to both Ms. Winfield and other non-municipal officials who are also seeking access to and use of these facilities. In this regard, the Town realizes that "security is not a talisman that the government may involve to justify *any* burden on speech (no matter how oppressive)." Black Tea Society, 378 F.3d 13 (emphasis in original). The Town is also aware that one form of viewpoint discrimination occurs when the state decides whether or not to impose criminal penalties based on someone's express viewpoint. See R.A.V. v. City of St. Paul, 505 U.S. 377, 391-392 (1992). That is not this case. Ms. Winfield has not alleged that the Town's decision to seek a criminal complaint against her was in any way "viewpoint" based. Rather, as evidenced by the various Incident Reports attached at Exhibits A, B, D and E, the Town's actions were borne of Ms. Winfield's overbearing *conduct*. The Constitution affords a

[10] While Ms. Winfield does not refer to the Mass. Declaration of Rights, it is generally coextensive with the federal constitution when it comes to freedom of expression. See In Re Opinion of the Justices to the Senate, 430 Mass. 1205 (2000); Walker v. Georgetown Housing Auth., 424 Mass. 671 (1997).

right to political speech: there is no requirement that everyone has to stop and listen.

Ms. Winfield's implicit claim that she has an absolute, unequivocal right to speak to Town officials or repeatedly call emergency lines for purposes of conveying her concerns with the Department is wrong; she does not have the right to badger Town officials, repeatedly call an emergency line, or physically remain inside of Town Hall after hours, for example, under the guise of the First Amendment. See, e.g., United States v. Bader, 698 F.2d 553 (1st Cir. 1983) (Breyer, J.) (defendants' convictions for participating in sit-ins at federal courthouse to protest draft registration not barred by the First Amendment); Hurley v. Hinckley, 304 F.Supp. 704 (D. Mass. 1969), aff'd. sub nom. Doyle v. O'Brien, 396 U.S. 277 (1970) (per curiam) (rejecting plaintiff's First Amendment-based challenge to Massachusetts' No Trespass statute); Greenberg v. Woodward, supra, (rejecting plaintiff's First Amendment challenge to similar Massachusetts' trespass statute); Commonwealth v. Wolf, 34 Mass. App. Ct. 949, 951 (1993) (affirming defendant's conviction for trespass under M.G.L. c. 266, §130, and noting the words "without right" are not unconstitutionally vague); cf. Colten v. Kentucky, 407 U.S. 104, 109 (1972) (upholding defendant's conviction for disorderly conduct, observing that "Colten's conduct in refusing to move on after being directed to do so was not protected by the First Amendment"). As to those matters of public concern upon which Ms. Winfield wishes to speak, she can still demonstrate or protest outside of Town Hall and other Town buildings; hold signs wherever they are permitted by Andover's Town Bylaws; write directly to the Town Manager; and/or actually attend a meeting(s) of the Board of Selectmen for purposes of airing her grievances with the Police Department. Nothing the Town has done forecloses Ms. Winfield from exercising her First Amendment rights in any one of these manners or in some other proper manner, as Ms. Winfield chooses to do.

***Illegal Arrest – Fourth Amendment Claim: Count II***

In this Count, Ms. Winfield seeks damages for alleged violations of her Fourth Amendment rights through her arrest at the CVS store on Main Street in Andover. To establish a claim based on 42 U.S.C. § 1983, a plaintiff must show that the conduct complained of was committed by a person acting under color of State law and it deprived the person of the rights, privileges, or immunities secured by the Constitution or laws of the United States. Daniels v. Williams, 474 U.S. 327, 328 (1986). "If probable cause exists to arrest, then there has not been a constitutional deprivation." Sietins v. Joseph, 238 F. Supp. 2d 366, 375 (D. Mass. 2003). Ms. Winfield asserts a civil rights claim for "illegal arrest" against Lt. Guy alone.

Courts apply a totality of the circumstances standard to determine if probable cause exists. U.S. v. Reyes, 225 F.3d 71, 75 (1st Cir. 2000). "Probable cause exists if, at the moment of arrest/detention, the facts and circumstances within the relevant actors' knowledge and of which they had reasonably reliable information were adequate to warrant a prudent person in believing" that the suspect has committed a crime. Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 254 (1st Cir. 1996). Under the facts and circumstances presented to Lt. Guy (and the other officers present), as he encountered Ms. Winfield at the Main Street CVS and was informed that she had violated a No Trespass Order, this standard is clearly met. Ms. Winfield had previously been advised (and acknowledged the fact) that she was forbidden from entering that CVS or contacting its employees, and "any further trespass may result in arrest and law enforcement custody in accordance with state law." No Trespass Order annexed to October 31, 2014 Incident Report at Ex. E. Probable cause is a question of law to be decided by the Court. Martin v. Applied Cellular Technology, Inc., 284 F.3d 1, *8 (1st Cir. 2002). Taking the facts in the light most favorable to Ms. Winfield, Lt. Guy had probable cause to arrest her October 31,

2014, and this claim fails as a matter of law.

***First Amendment Retaliation Claim: Count IV***

Ms. Winfield brings this claim against Lt. Pathiakis alone. Amended Compl., ¶ 35; Id. at p. 23. As previously indicated, Ms. Winfield's only allegation against Lt. Pathiakis is that he had some role in bringing the criminal charge against her in Lawrence District Court, for making annoying phone calls to the Andover Police Department. Amended Compl., ¶ 22. To the extent that Lt. Pathiakis played any role in the decision to bring a criminal charge against Ms. Winfield for making harassing phone calls, Lt. Pathiakis reasonably relied on the representations of other officers that the elements of probable cause were met when the decision to bring said charges was made. Given that Ms. Winfield did make dozens of phone calls to the Police Department, often sounding slurred or otherwise not providing reasons for her call, probable cause existed for this criminal charge. Roche, 81 F.3d at 254 (1st Cir. 1996); see also Amended Compl., ¶¶ 15, 16, 20, 21 (detailing Plaintiff's telephone calls); Exhibit B.

Alternatively, Ms. Winfield asserts that the Individual Officers improperly sought to have her confined pursuant to Section 12 following the February, 2012 and October, 2014, incidents. Amended Compl., ¶ 35; Exhibit A.[11] Qualified immunity protects government officials who use their discretionary powers – such as Lt. Pathiakis and Lt. Guy – "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Pearson v. Callahan, 555 U.S. 223, 243-244 (2009). "Even defendants who violate constitutional rights enjoy qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable

[11] The Complaint provides an "effort to get the Plaintiff involuntarily confined on February 12, 2012." Amended Compl., ¶ 35. This date appears to be an error.

standard." Davis v. Scherer, 468 U.S. 183, 190 (1984). This is a pure question of law. Hall v. Ochs, 817 F.2d 920, 924 (1st Cir. 1987). A reviewing court ordinarily must address two questions to resolve issues of qualified immunity. The court must first determine whether the right at issue was "clearly established." A right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Then, the court must "determine whether defendants reasonably should have comprehended that their specific actions transgressed those clearly established rights." Amsden v. Moran, 904 F.2d 748, 752 (1st Cir. 1990).

With regard to the constitutional claims in Ms. Winfield's Complaint, the Individual Officers are qualifiedly immune – "qualified immunity protects all but the plainly incompetent or those who knowingly violated the law and allows ample room for mistaken judgment." Hunter v. Bryant, 502 U.S. 224, 229 (1991). Here, the relevant Andover Police Department personnel acted reasonably in (a) attempting to take some action (in this instance, Lt. Pathiakis playing an undefined role in instituting a criminal charge) to prevent further interference by Ms. Winfield with the operation of the Department through her unremitting phone calls, and (b) instituting the two Section 12's for her own physical well-being. Given Ms. Winfield's pattern of erratic behavior as detailed in the numerous attached Incident Reports, coupled with the fact that the Individual Officers complied with established procedure for the institution of a Section 12, their conduct does not violate clearly established statutory or constitutional rights. Moreover, although the Individual Officers *sought* the relevant Section 12's, they were *issued* by the

Lawrence District Court's Psychologist.[12]

The Andover Police Department's restraint of Ms. Winfield pursuant to M.G.L. c. 123, § 12 (including Lt. Guy's limited role in the process) was within the scope of its legal authority under Section 12, and cannot be grounds for recovery of any of Ms. Winfield's state law claims against them based on her involuntary commitment. M.G.L. c. 123, § 22. Section 22 of the statute provides that "police officers . . . shall be immune from civil suits for damages for restraining, transporting, applying for the admission of or admitting any person to a facility" if such individual "acts pursuant to this chapter." See Tarabolski v. Town of Sharon, 1995 WL 169120, *2 (D. Mass. 1995) aff'd, 70 F.3d 110 (1st Cir. 1995) (finding false imprisonment claim not actionable under § 22); Munyiri v. Trinity EMS, 2014 WL 6065881, *2 (D. Mass. 2014) (same). Such immunity from state-law claims demonstrates that there is no transgression of Ms. Winfield's "clearly established rights." Amsden, 904 F.2d at 752.

***Intentional Infliction of Emotional Distress Claims: Count VI***

The Town now turns to Ms. Winfield's claim for intentional infliction of emotional distress (Count VI). To sustain such a claim, Ms. Winfield must allege and ultimately prove, *inter alia*, that each defendant's conduct "was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized society." Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976); Limone v. United States, 497 F. Supp. 2d 143, 226-229 (D. Mass. 2007) ("Limone"). Ms. Winfield asserts no allegations of this description against either of

[12] The First Circuit has observed that "the statutory mechanism [with respect to M.G.L. c. 123 § 12] affords reasonable safeguards against such concerns [of abuse]: a pink paper can be authorized only by a licensed psychiatric physician, whose extensive education and specialized experience and training should enable the psychiatric physician more reliably to parse such lay reports" of physical, emotional, or behavioral symptoms. McCabe v. Life-Line Ambulance Service, Inc., 77 F.3d 540, 551 (1st Cir. 1996) (internal citations omitted). The First Circuit in McCabe noted it would be the "exceptional case in which an expert evaluation was based on patently insufficient or unreliable information." Id.

the Individual Officers, and certainly nothing that approaches this standard of egregiousness.[13] In any action alleging intentional infliction of emotional distress, the court has discretion to dismiss the claim upon a review of the allegations at the motion to dismiss stage. Redgrave v. Boston Symphony Orchestra, 557 F.Supp. 230, 236 (D. Mass. 1983). As noted previously, the only action Lt. Pathiakis is alleged to have taken with respect to Ms. Winfield is some limited role in bringing a criminal charge against her for her unrelenting phone calls to the Department. As explicitly stated by District Judge Stearns in the case of Robinson v. Carney, 2010 WL 183760, *3 (D. Mass.), the filing of a criminal complaint is not sufficiently "extreme and outrageous" to support such a claim.

Similarly, compared to conduct described in Limone for example, Lt. Guy submits that, even assuming *arguendo* that he initiated a Section 12 against Ms. Winfield so that he did not have to "deal" with her (the most tendentious charge against him), given Ms. Winfield's erratic behavior over a number of interactions with members of the Police Department, her Complaint falls short of describing conduct that "was beyond all possible bounds of decency." See, e.g., Tonneson v. Cambridge College, 2011 WL 3798874 *3 (D. Mass.) (plaintiff's allegations that she was terminated without cause in retaliation for her being a whistleblower . . . , the subject of defamatory remarks, and questioned by [the FBI] . . . is not beyond all bounds of decency . . . utterly intolerable in a civilized community.") (citations omitted); Robinson v. Carney, 2010 WL 183760, *3 (D. Mass.) (filing of criminal complaint "is not as a matter of law, particularly in a society as accustomed to litigation as ours (as [plaintiff's] own complaint demonstrates), an action so "extreme and outrageous" as to support a claim of intentional infliction of emotional

[13] Under the Mass. Tort Claims Act ("MTCA"), Ms. Winfield cannot pursue such a claim against the Town of Andover itself. See M.G.L. c. 258, §10(c)(intentional torts against municipality precluded by Section 10(c) of the MTCA).

distress."); Jones v. Maloney, 74 Mass. App. Ct. 745, 750-51 (2009) (even if school principal's investigation of plaintiff-student was "incomplete or precipitous in any way," his negligence would not support a claim for intentional infliction of emotional distress).

## CONCLUSION

For the above-stated reasons, the defendants respectfully request that the Court allow their Motion to Dismiss plaintiff's Complaint in its entirety together with such other relief as this Court deems just and proper.

Respectfully Submitted,

The Defendants,
ANDOVER POLICE DEPARTMENT,
LIEUTENANT EDWARD J. GUY, III, and
LIEUTENANT JOHN N. PATHIAKIS,
By their attorneys,

**PIERCE, DAVIS & PERRITANO, LLP**

*/s/ Adam Simms*
Adam Simms, BBO #632617
John M. Wilusz, BBO #684950
90 Canal Street
Boston, MA 02114
(617) 350-0950
asimms@piercedavis.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Notice of Appearance, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on December 16, 2014.

*/s/ Adam Simms*
Adam Simms